**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re:

MACKENZIE R. ALEXANDER

        Debtor.

------------------------------------------------------------------x

Chapter 7

Case No. 24-35982 (KYP)

**MEMORANDUM DECISION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION FOR CONTEMPT SANCTIONS
AGAINST PROSCRIPT PHARMACY FOR FAILING TO COMPLY
WITH THE COURT'S DECEMBER 12, 2024 ORDER**

**APPEARANCES:**

THE LAW OFFICE OF RICK S. COWLE
*Counsel for the Debtor*
18 Fair Street
Carmel, NY 10512
By:    Rick S. Cowle, Esq.
        Of Counsel

LAW OFFICE OF ROLAND R. ACEVEDO
*Co-Counsel for Proscript Pharmacy*
250 Park Ave
7th Floor
New York, New York 10177
By:    Ronald R. Acevedo, Esq.
        Of Counsel

LAW OFFICES OF THOMAS A. THOMPSON
*Co-Counsel for Proscript Pharmacy*
148 Whites Cove Road
Suite 1
Yarmouth, Maine 04096
By:    Thomas A. Thompson, Esq.
        Of Counsel

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

**INTRODUCTION**

On December 12, 2024, the Court entered an order ("Contempt Order") holding creditor Proscript Pharmacy ("Proscript") in contempt for violating the automatic stay and awarding Mackenzie Alexander ("Debtor") actual and punitive damages pursuant to 11 U.S.C. §§ 362(k) and 105(a) totaling $5,445.00.[1] The Contempt Order required Proscript to pay the monetary sanctions within twenty days, but Proscript failed to make the payments. Proscript's violation of the Contempt Order prompted the Debtor to make the instant application to hold Proscript in contempt for such violation and award the Debtor additional compensatory and punitive damages ("Second Sanctions Motion").[2] Proscript objects to the Second Sanctions Motion and has since satisfied the amounts owed under the Contempt Order.[3]

To resolve the Second Sanctions Motion, the Court must determine whether the Contempt Order is a "money judgment" within the meaning of Federal Civil Rule 69(a)(1), under which the proper means of enforcement would be by a writ of execution rather than a contempt proceeding. For the reasons stated, the Court finds that the Contempt Order is not a "money judgment," and the Second Sanctions Motion is

---

[1]    *See Order Granting Motion for Contempt Against Creditor, Proscript Pharmacy*, dated Dec. 12, 2024 (ECF Doc. # 12). "ECF Doc. # _" refers to documents filed on the electronic docket of this case. "ECF p. _" refers to the page number imprinted on the top of the page by the Court's electronic filing system. References to documents filed on the docket of other cases will include the case number.

[2]    *See Application in Support of Motion for Contempt Against Creditor, Proscript Pharmacy, for Violations of the Automatic Stay Pursuant to Federal Rules of Bankruptcy Procedure 9014 and 9020*, dated Jan. 28, 2025 (ECF Doc. # 17-1).

[3]    *See Affirmation of Roland R. Acevedo in Support of Creditor Proscript's Opposition to Debtor's Motion for Contempt*, dated Feb. 17, 2025 ("Acevedo Affirmation") (ECF Doc. # 23), and *Affirmation of Gina DeBartolome in Support of Creditor Proscript's Opposition to Debtor's Motion for Contempt*, dated Feb. 17, 2025 ("DeBartolome Affirmation") (ECF Doc. # 24).

GRANTED to the extent of awarding the Debtor's attorneys' fees and costs totaling
$3,987.00, but the request for an award of punitive damages is DENIED.

## **JURISDICTION**

This Court has jurisdiction over the Second Contempt Motion pursuant to

28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference (M-431),

dated January 31, 2012 (Preska, C.J.) referring bankruptcy cases and proceedings to the

Bankruptcy Judges of the Southern District of New York.  This is a core proceeding

under 28 U.S.C. § 157(b).  Further, the Second Contempt Motion requires the Court to

interpret and enforce the Contempt Order, a matter over which the Court has

jurisdiction.  *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("[T]he

Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior

orders.").

## **BACKGROUND**

**A.    The Bankruptcy Filing and Proscript's Stay Violations**

On September 29, 2024, the Debtor filed a voluntary petition for relief under

Chapter 7 of the Bankruptcy Code.  The Debtor's Schedule E/F listed Proscript as an

unsecured creditor holding a claim in the amount of $335.00 ("Proscript Claim").  (ECF

Doc. # 1 at ECF p. 27.)  By operation of the automatic stay, the filing of the petition

enjoined, *inter alia*, "any act to obtain possession of property of the estate or of property

from the estate . . . ."  11 U.S.C. § 362(a)(3).  The following day, the Court generated a

*Notice of Chapter 7 Bankruptcy Case* ("Chapter 7 Notice") (ECF Doc. # 4), which

advised creditors of the effect of the automatic stay:

> The filing of the case imposed an automatic stay against most collection
> activities.  This means that creditors generally may not take action to
> collect debts from the debtors or the debtors' property.  For example, while

the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from the debtors. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.

A copy of the Chapter 7 Notice was mailed to Proscript. (ECF Doc. # 5 (Certificate of Mailing).)

On October 3, 2024, Proscript generated a statement seeking payment of the Proscript Claim and mailed it to the Debtor.[4] On October 11, 2024, Debtor's counsel sent a letter to Proscript informing it of the Debtor's bankruptcy filing, enclosing an additional copy of the Chapter 7 Notice, informing Proscript that the automatic stay enjoins acts to collect any debt, and advising that violation of the automatic stay "may be considered contempt of court and be punished accordingly."[5]

Despite receipt of the Chapter 7 Notice and counsel's October 11 letter, Proscript sent another statement to the Debtor on November 1, 2024 seeking payment of the Proscript Claim.[6]

## B.   The First Sanctions Motion and Entry of the Contempt Order

On November 18, 2024, the Debtor filed the First Sanctions Motion seeking actual and punitive damages pursuant to 11 U.S.C. §§ 362(k) and 105(a) for Proscript's

---

[4]    A copy of the October 3 statement is attached as Exhibit D to the *Application in Support of Motion for Contempt Against Creditor, Proscript Pharmacy, for Violations of the Automatic Stay Pursuant to Federal Rules of Bankruptcy Procedure 9014 and 9020*, dated Nov. 18, 2024 ("First Sanctions Motion") (ECF Doc. # 7-1).

[5]    A copy of counsel's October 11 letter is attached as Exhibit E to the First Sanctions Motion.

[6]    A copy of the November 1 statement is attached as Exhibit F to the First Sanctions Motion.

4

violations of the automatic stay.[7]  A copy of the First Sanctions Motion was mailed to

Proscript.  (ECF Doc. # 8 (Affidavit of Service).)  Proscript neither responded to the

First Sanctions Motion nor appeared at the hearing on December 10, 2024.  The Court

granted the First Sanctions Motion and awarded Debtor's attorneys' fees and costs in

the amount of $2,445.00 and punitive damages in the amount of $3,000.00.  The Court

explained that it was awarding $1,000 in punitive damages for Proscript's issuance of

the October 3 statement after receipt of the Chapter 7 Notice, and an additional $2,000

in punitive damages for Proscript's issuance of the November 1 statement after receipt

of Debtor's counsel's October 11 letter demanding compliance with the automatic stay.

The Court entered the Contempt Order on December 12, 2024, and the order required

Proscript to satisfy the sanctions awards within twenty days.  The Debtor retained a

servicing company to effectuate personal service of the Contempt Order on Proscript,

and on December 30, 2024, a copy of the Contempt Order was personally served on a

Proscript officer at its place of business.  (*See* Second Sanctions Motion, Ex. B

(Affirmation of Service).)

**C.     The Second Sanctions Motion**

On January 28, 2025, the Debtor filed the Second Sanctions Motion stating that

Proscript had not paid the sanctions awards as required by the Contempt Order and

seeking a further award of actual and punitive damages.  (*See generally* Second

Sanctions Motion.)  Proscript responded to the Second Sanctions Motion arguing that

the Contempt Order should be viewed as a "money judgment" under Federal Civil Rule

---

[7]     Section 362(k) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

69(a)(1), and, as a result, the Debtor must seek a writ of execution to enforce the order rather than contempt sanctions.  (Acevedo Affirmation ¶¶ 2-7.)  Proscript also argued that the Contempt Order was defective because it did not properly scrutinize the award of attorneys' fees or make requisite factual findings for the award of punitive damages. (*Id.* ¶¶ 8-14.)  Proscript's CEO stated that its mailroom is always very busy, no one at Proscript understood what a bankruptcy stay was when it reviewed the notices it received, Proscript's billing system generated the two post-petition statements sent to the Debtor, Proscript's actions were not in bad faith, and Proscript has taken steps to ensure that this oversight does not occur in the future.  (DeBartolome Affirmation ¶¶ 4-9.)

The Debtor responded to Proscript's objection on February 21, 2025 (*see Affirmation in Reply* (ECF Doc. # 27)), and the Court heard oral argument on February 25, 2025.  During oral argument, the Court overruled Proscript's objection to the extent it sought to re-litigate the Contempt Order.  Proscript neither sought a stay of, nor appealed, the Contempt Order.  *See United States v. Pescatore*, 637 F.3d 128, 144 (2d Cir. 2011) ("It is a basic proposition that all orders and judgments of courts must be complied with promptly.  If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.") (quoting *Maness v. Meyers*, 419 U.S. 449, 458 (1975)) (alteration and quotation marks omitted).  After the hearing, Debtor's counsel alerted the Court that Proscript paid the monetary sanctions under the Contempt Order.  (*See Letter of Rick S. Cowle*, dated Feb. 28, 2025 (ECF Doc. # 28); *see also Letter of Thomas A. Thompson*, dated Mar. 3, 2025 (ECF Doc. # 29).)

Although Proscript has now satisfied the amount owed under the Contempt

Order, the issue of whether it must pay the Debtor's attorneys' fees for prosecuting the

Second Sanctions Motion remains outstanding.  To resolve that issue, the Court must

first determine whether the Contempt Order is a "money judgment" as set forth in

Federal Civil Rule 69(a)(1).

**DISCUSSION**

**A.     The Contempt Order is Not a "Money Judgment"**

Rule 69(a)(1) of the Federal Rules of Civil Procedure, made applicable here

pursuant to Rules 7069 and 9014(c) of the Federal Rules of Bankruptcy Procedure,

provides that a "money judgment" should be enforced by a writ of execution:

> **Money Judgment; Applicable Procedure.**  A money judgment is
> enforced by a writ of execution, unless the court directs otherwise.  The
> procedure on execution – and in proceedings supplementary to and in aid
> of judgment or execution – must accord with the procedure of the state
> where the court is located, but a federal statute governs to the extent it
> applies.

FED. R. CIV. P. 69(a)(1).[8]  Given Rule 69's directive, a court should generally not invoke

its contempt powers when a party seeks enforcement of a money judgment.  *Ecopetrol*

*S.A. v. Offshore Expl. & Prod. LLC*, 172 F. Supp. 3d 691, 698 (S.D.N.Y. 2016).

However, not every bankruptcy judgment or order with a monetary component is

a "money judgment" within the meaning of Federal Civil Rule 69(a)(1).  *Ziino v. Baker*,

613 F.3d 1326, 1328-29 (11th Cir. 2010) (distinguishing a "final judgment" under

Federal Civil Rule 54(a) from a "money judgment" under Federal Civil Rule 69(a)(1),

---

[8]     "A writ of execution is an order issued by a court, in the form of a final process designed to
enforce a money judgment of that court, directing an officer of the court to seize the property of a
judgment debtor and transfer the proceeds over to the judgment creditor.  Such execution only applies to
money judgments."  13 MOORE'S FEDERAL PRACTICE – CIVIL § 69.02 (3d ed. 2025).

7

and ruling that an allowed claim against a bankruptcy estate was not a money judgment); *Kelley, Lovett, Blakey & Sanders P.C. v. Guardian Bank* (*In re Hood Landscaping Prods., Inc.*), 639 B.R. 785, 786-88 (Bankr. M.D. Ga. 2022) (explaining that, equating a "money judgment" under Federal Civil Rule 69(a)(1) with a "judgment" under Federal Civil Rule 54 violates the canon of statutory interpretation against surplusage, and ruling that an order approving attorneys' fees of debtor's counsel was not a money judgment); *accord Collect Access, LLC v. Hernandez* (*In re Hernandez*), BAP No. SC-13-1301, 2014 WL 1345940, at *6 (B.A.P. 9th Cir. Apr. 4, 2014) (distinguishing a "judgment" under Federal Bankruptcy Rules 9001(7) and 9002 from a "money judgment" under Federal Civil Rule 69(a)(1), and rejecting the viewpoint that every appealable bankruptcy order is a money judgment).

As pertinent here, the "[u]se of the contempt power is an appropriate way to enforce a sanction for misconduct, which is not an ordinary money judgment." *Cleveland Hair Clinic v. Puig*, 106 F.3d 165, 166 (7th Cir. 1997) (Easterbrook, J.); *accord England v. Goodcents Holdings, Inc.*, Case No. 1:08-CV-1702, 2009 WL 2835201, at *1-2 (N.D. Ga. Aug. 31, 2009) (finding that a contempt proceeding, rather than a writ of execution, was the proper means to enforce an order awarding the defendant attorneys' fees and costs in the amount of $5,319.00 based on plaintiff's unreasonable continuation of litigation of a mooted civil action); *SD Prot., Inc. v. Del Rio*, 587 F. Supp. 2d 429, 434 (E.D.N.Y. 2008) (finding the plaintiff in contempt of court for failing to comply with several orders awarding attorneys' fees and costs to defendant for plaintiff's failure to produce discovery documents and for delaying the resolution of the action); *Loftus v. Se. Pa. Transp. Auth.*, 8 F. Supp. 2d 464, 468 (E.D. Pa. 1998) (finding that a contempt proceeding, rather than a writ of execution, was the

8

proper means to enforce an order awarding defendants attorneys' fees in the amount of

$4,000 based on plaintiff's counsel's prosecution of a frivolous lawsuit), *aff'd*, 187 F.3d

626 (3d Cir.), *cert. denied*, 528 U.S. 1047 (1999).  The district court in *Loftus* explained

that public policy supports distinguishing money judgments from monetary sanctions:

> The distinctions between sanctions and money judgments are warranted
> in light of public policy.  While sanctions for misconduct implicates the
> very integrity of the Court's processes, enforcement of a money judgment
> as between private parties is best left to the creditor-debtor mechanism
> provided for in the Federal Rules of Civil Procedure.  *See* Fed.R.Civ.P.
> 69(a).

*Loftus*, 8 F. Supp. 2d at 464.

The *Hernandez* decision from the Ninth Circuit Bankruptcy Appellate Panel

("BAP") is on point.  Prior to Mr. Hernandez ("Hernandez") filing a Chapter 7 petition,

judgment creditor Collect Access, LLC ("Collect") obtained a writ of execution against

Hernandez, the sheriff served the writ on Hernandez's bank, and Collect received

$712.39 from Hernandez's bank account.  *Hernandez*, 2014 WL 1345940, at *1.

Hernandez filed a Chapter 7 bankruptcy petition shortly thereafter and moved to compel

turnover of the funds arguing that a failure to turn over the funds was a violation of the

automatic stay.  *Id.*  The bankruptcy court granted Hernandez's motion finding that

Collect's failure to cease collection efforts constituted a willful violation of the stay.  *Id.*

(quoting *In re Hernandez*, 468 B.R. 396, 405-06 (Bankr. S.D. Cal.), *aff'd on other*

*grounds*, 483 B.R. 713 (B.A.P. 9th Cir. 2012)).  The bankruptcy court invited Hernandez

to submit a further application requesting an award of damages caused by Collect's stay

violation, Hernandez submitted such application, and the bankruptcy court awarded

Hernandez attorney's fees and costs totaling $3,572.06 ("Attorney Fee Order").  *Id.* at

*1-3.  Collect did not pay the amount due under the Attorney Fee Order, and Hernandez

moved to hold Collect in contempt. *Id.* at *3. The bankruptcy court entered an order to

show cause why Collect should not pay the amount owed under the Attorney Fee Order

and ordered Collect to pay the attorney's fees incurred by Hernandez in seeking

compliance with the Attorney Fee Order. *Id.* at *4. Collect appealed that order to the

BAP. *Id.*

On appeal, Collect argued, among other things, that the Attorney Fee Order was a

"money judgment" within the meaning of Federal Civil Rule 69(a)(1) subject to

enforcement by a writ of execution. *Id.* at *6. In support, Collect cited Federal

Bankruptcy Rule 9001(7), which defines "judgment" as "any appealable order," and

Federal Bankruptcy Rule 9002, which provides an identical definition. *Id.* The BAP

rejected the argument explaining that "Collect's argument proves too much, because, at

bottom, its 'judgment theory' would treat all orders issued by a bankruptcy court as

judgments." *Id.* The BAP ultimately followed the line of cases supporting the

proposition that contempt proceedings are an appropriate means of enforcing a prior

order sanctioning a party for misconduct. *Id.* at *7-8 (citing *Rosales v. Wallace*, 490

B.R. 898, 907 (B.A.P. 9th Cir. 2013)). The BAP explained why the Attorney Fee Order

was a sanctions order:

> Here, the bankruptcy court found in the Attorney Fee Order that Collect
> had willfully violated the automatic stay by declining to release the seized
> funds to Hernandez, and awarded Hernandez compensatory sanctions
> under § 362(k). Collect did not appeal that order. And although Collect
> argues that the Attorney Fee Order was not a sanction order for
> misconduct, this is quibbling. The Attorney Fee Order directed Collect to
> pay the damages it had caused Hernandez to incur, consisting of attorneys
> fees and costs, in response to Collect's violation of the § 362(a) automatic
> stay. Simply put, Collect's conduct was inappropriate when measured
> against the Code, and the Attorney Fee Order cannot fairly be
> characterized as anything other than a sanction.

*Id.* at \*7; *see also* 11 U.S.C. § 342(g)(2) (describing an award under 11 U.S.C. § 362(k) as a "monetary penalty").[9]

This Court agrees with *Hernandez* and the other cases cited above that a sanctions order with a monetary component, including under 11 U.S.C. § 362(k), is not an ordinary money judgment. A sanction for misconduct goes to the integrity of the Court's processes and is unlike money judgments routinely entered in civil actions among private parties. *Loftus*, 8 F. Supp. 2d at 464. Therefore, a contempt proceeding is an appropriate means to enforce a sanctions order, and the moving party need not seek a writ of execution under Federal Civil Rule 69(a)(1). Here, the Contempt Order was an order sanctioning Proscript for its willful violation of the automatic stay pursuant to 11 U.S.C. §§ 362(k) and 105(a). Thus, the filing of the Second Sanctions Motion to enforce compliance with the Contempt Order was procedurally proper.

The Court acknowledges that there is some precedent supporting the view that a sanctions order under 11 U.S.C. § 362(k) is a money judgment. Proscript relies on *Miller v. PNC Mortgage* (*In re Miller*), Case No. 12-21402 (Bankr. W.D. Pa. Apr. 12, 2013), in which the bankruptcy court ruled that an order awarding monetary damages under section 362(k) was "properly characterized as a monetary judgment" subject to Federal Civil Rule 69(a). *Id.* at 3. However, the only authority *Miller* cited to support this proposition was *Patterson v. America's Voice, Inc.* (*In re America's Voice, Inc.*), Nos.

---

[9]   A year prior to the *Hernandez* decision, the BAP applied the same rationale and ruled that a contempt proceeding was the proper means to enforce an order sanctioning a party for willfully violating the discharge injunction. *Wallace*, 490 B.R. at 908 ("[W]e conclude that the First Contempt Order awarding Debtors sanctions for Appellants' willful violation of the discharge injunction is distinguishable from an ordinary money judgment. As such, it was not improper for the bankruptcy court to conduct a contempt proceeding and hold Appellants in contempt for their failure to pay the sanctions award imposed by the First Contempt Order.").

99-02704, 00-10006, 2000 WL 33529764 (Bankr. D. D.C. Oct. 4, 2000).  In *America's Voice*, the bankruptcy court ruled that orders awarding attorneys' fees and costs were money judgments subject to Federal Civil Rule 69.  *Id.* at \*1.  However, the two orders awarding attorneys' fees and costs were not sanctions for misconduct.  *See id.* ("The March 30 order simply directed that 'the Debtor shall pay to Plaintiff's Counsel the sum of $350.00 as reasonable attorneys' fees.'"); *id.* at \*2 ("The July 14 order directing the deposit of $519.80" was to pay additional costs associated with an appeal to secure a stay pending appeal.).  Further, the awards appear to have been associated with a money judgment in favor of the plaintiff as part of an adversary proceeding.  (*See* ECF of *Patterson v. America's Voice, Inc.*, Adv. P. No. 00-10006 Doc. # 42 (Bankr. D. D.C. Apr. 25, 2000) ("Final Judgment for Plaintiff Ferman Patterson Against Defendant America's Voice, Inc.  Debtor shall Pay Plaintiff, $36,857 within 10 Days of Entry of this Judgment. . . .  Plaintiff to Recover Costs by way of a Bill of Costs to be Filed within 20 Days after Entry of this Judgment.").  Entry of money judgments as part of an adversary proceeding is common.  *Cf. Hood Landscaping*, 639 B.R. at 787 (stating that "adversary proceedings are the only appropriate channel for receiving a money judgment in a bankruptcy case").  Therefore, the Court respectfully disagrees with the ruling in *Miller* as it relies on distinguishable precedent.

Two additional cases support the conclusion that an order under section 362(k) is a money judgment.  In *In re Snorden*, the bankruptcy court denied reconsideration of an order refusing to hold in contempt a party that had willfully violated the automatic stay.  559 B.R. 857, 858 (Bankr. W.D. Mich. 2016).  In summarizing the bench ruling preceding the written opinion on reconsideration, the bankruptcy court stated that its order under section 362(k) was a money judgment, and therefore, the debtor's "recourse

lies in the collection remedies under applicable non-bankruptcy law. Fed. R. Bankr. P.

7069. When a party fails to satisfy a court-imposed money judgment the appropriate

remedy is a writ of execution, not a finding of contempt." *Id.* at 861 (citations, internal

quotation marks, and alteration omitted). However, the debtor in *Snorden* "[did] not

dispute that she holds a money judgment enforceable pursuant to Fed. R. Civ. P. 7069."

*Id.* at 861 n.5. Thus, the issue was not fully litigated.

In re Lara also supports the view that an order under section 362(k) is a money

judgment. No. 16-50201, 2017 WL 4457436, at *3 (Bankr. N.D. Tex. Sept. 6, 2017)

("Fairly and narrowly construed, the Court's [section 362(k) order] is a judgment of

money damages. . . . An award of money damages should almost always be enforced, at

least initially, through a writ of execution. . . . The [debtors] have not attempted this

measure. As such, a resort to any other remedy at this point is inappropriate."). *Lara*

cited *Snorden* to support its conclusion that a writ of execution was the appropriate

remedy. *See id.* (citing *Snorden*, 559 B.R. at 862-63). As stated, however, the debtor in

*Snorden* conceded that the section 362(k) order in that case was a money judgment.

In the end, the Court agrees with the logic of the line of cases distinguishing

sanctions orders from money judgments including *Cleveland Hair Clinic* and

*Hernandez* for the reasons stated.

**B.    An Award of Actual, but Not Punitive, Damages is Appropriate**

Having determined that the Second Sanctions Motion is procedurally proper, the

Court must determine whether sanctions are appropriate under the circumstances. The

Court has the inherent power to sanction a party to enforce compliance with its orders.

*Worms v. Rozhkov* (*In re Markus*), 78 F.4th 554, 564 (2d Cir. 2023) (citations omitted).

This authority is supplemented by 11 U.S.C. § 105(a), and relief to the affected party

"must include the award of monetary and other forms of relief to the extent such awards are necessary and appropriate to carry out the provisions of the Bankruptcy Code and provide full remedial relief." *Solow v. Kalikow* (*In re Kalikow*), 602 F.3d 82, 97 (2d Cir. 2010) (quoting *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000)).

The Court may hold a party in civil contempt if "there is no fair ground of doubt as to whether the order barred" the party's conduct. *Taggart v. Lorenzen*, 587 U.S. 554, 557 (2019) (emphasis omitted); *see also id.* ("In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful."); *accord Off. Comm. of Unsecured Creditors of Windstream Holdings, Inc. v. Charter Commc'ns Operating, LLC* (*In re Windstream Holdings, Inc.*), 105 F.4th 488, 495 (2d Cir. 2024) (finding that *Taggart*'s objective standard applies "to § 105 contempt actions that are not covered by § 362(k)").

Here, the Contempt Order required Proscript to pay actual damages in the amount of $2,445.00 and punitive damages in the amount of $3,000.00 within twenty days of entry, *i.e.*, January 1, 2025. Even if Proscript were to argue that it did not receive notice of the Contempt Order until personal service was effectuated on December 30, 2024, it still had not paid the amount owed at the time the Debtor filed the Second Sanctions Motion on January 28, 2025. Although Proscript eventually satisfied the amount owed under the Contempt Order, the payments were not made until after the hearing on the Second Sanctions Motion. By that point, the Debtor had already incurred attorneys' fees to file and prosecute the Second Sanctions Motion. Therefore, the payment of the Debtor's reasonable attorneys' fees is necessary to provide "full remedial relief" to the Debtor. *Kalikow*, 602 F.3d at 97 (citation omitted).

In his February 28, 2025 letter, Debtor's counsel attached a time sheet showing that two attorneys spent 8.6 hours at a rate of $450.00 per hour on this matter including performing legal research, drafting the motion, reviewing the opposition, drafting the reply, and prepping for and appearing at the hearing.  One legal assistant spent 0.6 hours at a rate of $195.00 per hour on this matter to perform administrative functions such as mailing copies of pleadings to interested parties.  The fees of the attorneys and legal assistant totaled $3,987.00.  The Court finds that the amount of time spent as well as the rate per hour were reasonable given the complexity of the matter and skill of the attorneys.

However, unlike 11 U.S.C. § 362(k), which expressly provides for the award of punitive damages in appropriate circumstances, this Court may not award punitive damages under its inherent sanctioning powers.  *Markus*, 78 F.4th at 566 (citing *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 144 (2d Cir. 2014)).  Therefore, the portion of the Second Sanctions Motion seeking an award of punitive damages is denied.

### ORDER OF CONTEMPT

For the reasons stated, it is hereby:

**ORDERED**, that the branch of the Second Sanctions Motion seeking the payment of attorneys' fees is GRANTED pursuant to this Court's inherent sanctioning authority and 11 U.S.C. § 105(a), but the branch of such motion seeking an award of punitive damages is DENIED; and it is further

**ORDERED**, that Proscript shall pay attorneys' fees incurred by the Debtor in prosecuting the Second Sanctions Motion in the amount of $3,987.00 in the form of a check payable to The Law Office of Rick S. Cowle, P.C. and sent within 20 days of the entry of this Order to 18 Fair Street, Carmel, New York 10512; and it is further

**ORDERED**, that the Court shall retain jurisdiction to interpret, implement, and

enforce this Order.

/s/ **Kyu Y. Paek**



**Dated: March 18, 2025**                      _____
**Poughkeepsie, New York**                     **Hon. Kyu Y. Paek**
                                               **U.S. Bankruptcy Judge**